William C. WALKER, Appellant,

v.

UNITED STATES, Appellee.

No. 11851.

District of Columbia Court of Appeals.

Argued June 27, 1978.

Decided May 25, 1979.

Rehearing and Rehearing En Banc
Denied Aug. 3, 1979.

Herbert B. Dixon, Jr., Washington, D.C., appointed by this court, for appellant.

Richard C. Otto, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty. and John A. Terry, Michael W. Farrell and John W. Polk, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before GALLAGHER and MACK, Associate Judges, and YEAGLEY, Associate Judge, Retired.

MACK, Associate Judge:

On May 4, 1976, appellant was found guilty by a jury of first-degree burglary while armed, armed robbery, and lesser-included offenses. One of his contentions on appeal is that the government's cross-examination regarding his not having offered potentially exculpatory information to his parole[1] officer was so improper as to have deprived him of a fair trial. We affirm.

Shortly after 11:00 p. m. on April 6, 1975 the complaining witness was awakened by the sound of the front door of his basement apartment being knocked open. One woman and two men entered and told him to cover his head with a pillow. One of the men carried a gun, although the complainant could not say which one. These persons took $3.00 from the pocket of complainant's trousers, a medicine bottle containing pennies and a medicine bottle containing three pills. They left through a back exit of the apartment.

Alerted that a break-in had taken place, two police officers reported to complainant's apartment and encountered appellant and a woman in an enclosed area behind the house. A shotgun was found lying on the ground approximately six inches on the other side of the fence which enclosed the backyard. The officers took the two persons back inside the apartment where complainant identified them as two of the persons who had broken in. He could not, however, identify appellant at trial.

At trial, appellant testified in his own defense. He stated that he and two companions went to the complainant's house under the impression that they could purchase drugs there. They walked into the house because the door was open, appellant noticing broken glass on the floor. He did not see complainant and realized that the police were coming. He said that he ran and subsequently, when apprehended, told the police that he lived in the house because of the fact that a parole warrant was outstanding against him.

Over vigorous defense objection, the government was permitted at trial to cross-examine appellant as to why he had not told his parole officer (whom he had seen in March) that he ran when the police arrived because of the outstanding warrant. The following colloquy took place:

Q. Sir, what is the name of your probation officer?

A. Name is S. W. Cooper.

Q. S. W. Cooper.

Is he a probation officer in the District of Columbia?

A. Yes, sir, in the District of Columbia.

Q. When did you last see him?

MR. DIXON: [Defense Counsel] May the question be clarified? Is he referring to last from today?

MR. POLK: [Government Counsel] From today, when did he last see him.

THE WITNESS: I last saw my parole officer, it was March.

BY MR. POKE:

Q. Did you tell him about this case? Does he know about these charges against you?

A. Yes, sir.

Q. And did you tell him your explanation about this whole case that you ran out the back door because you were afraid?

MR. DIXON: Objection.

THE COURT: Objection overruled.

BY MR. POLK:

Q. You didn't tell him that, sir?

A. He didn't ask me.

Q. You didn't think of telling him that though that this was your explanation because you ran out back was because you had a probation warrant outstanding on you, you didn't tell him that?

A. Well, the probation warrant—

Q. Sir, did you tell him that or did you not tell him that?

A. No, sir.

---

1. While the words "probation" and "parole" appear interchangeably in the record, exhibits indicate that appellant, at the time of this offense, was under the supervision of the District of Columbia Board of Parole.

Q. You didn't feel that was impor-tant; is that right?

A. I didn't feel it important to tell him about the probation.

Q. Explain his alibi to him, your excuse to him?

Didn't you think that was important to tell him that?

A. No, sir.

Q. You didn't think it was important at that time?

MR. DIXON: Objection.

THE COURT: Objection is overruled.

MR. DIXON: Your Honor, may I at least go on the record that Mr. Walker has no obligation to tell anybody anything?

THE COURT: The objection is overruled, Mr. Dixon.

Thereafter, during its closing argument to the jury the government emphasized appellant's failure to discuss his reason for running with his parole officer, and asserted, in effect, that there was no outstanding detention warrant in spite of the fact that the government had actual notice of it:

Walker says ["] I was scared because I had a probation warrant outstanding.["] Well, there is no evidence to corroborate that he had no probation warrant outstanding. He never talked to his probation officer. This is part of his whole defense, isn't this part of his whole excuse? Don't you think he would have discussed it with his probation officer?

. . .

Following this argument appellant's counsel immediately requested that the court either permit him to present evidence from the court files that a warrant for appellant was indeed outstanding at the time of his arrest or, alternatively, to take judicial notice of that fact. The court denied the requests.

Appellant assigns as impermissible comment (1) the cross-examination on the basis of his failure to discuss aspects of his defense with his parole officer, and (2) the statements in the government's closing argument that there was no evidence to cor-

roborate the existence of the warrant at all, when it was a matter of public record of which the government had knowledge.

In support of his first argument, appellant, relying primarily on *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975) and *Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), contends that the cross-examination in question constituted an impermissible attempt at impeachment in derogation of his constitutional right against compulsory self-incrimination. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Only recently we reaffirmed the *Hale-Doyle* rationale insulating a suspect's right, while in custody, to remain silent against later prosecutorial efforts at trial to establish that silence as inconsistent with a claim of innocence. *See Hill v. United States*, D.C.App. (No. 10578, Apr. 9, 1979). *See also In re D. L. J.*, D.C.App., 383 A.2d 1081 (1978). In *Hill, supra*, however, we refused to apply the *Hale-Doyle* rationale because the defendant there did not exercise his constitutional right to remain silent when taken into custody, but rather told an exculpatory story omitting details—details that triggered the court's determination that the omitted facts were so material to the commission of the alleged offense that the failure to have mentioned them amounted to inconsistency. *Hill, supra*, slip op. at 15. We stressed that the application of such a standard [of assessing inconsistency] requires an individual determination in each case.

So, here too, the peculiar facts of the instant case place it outside the rationale of *Hale-Doyle*. Appellant was not in a posture posing the danger of compulsory incrimination. He was not arrested by his parole officer, nor subjected to custodial interrogation by him, nor obliged to assert his right to remain silent in order to avoid self-incrimination. While, therefore, there must have been a showing that his failure to tell the parole officer some fact was so material to his trial testimony as to pose an

inconsistency having probative value for impeachment purposes, its use would not have encroached upon his constitutional right against self-incrimination.

In *Hill, supra,* slip op. at 14, we cited Wigmore to the effect that "'a failure to assert a fact, when it would have been natural to assert it, amounts in effect to an assertion of the non-existence of the fact' and constitutes a 'prima facie' inconsistency." 3A J. Wigmore, Evidence § 1042 (Chadbourne rev.1970). *See also* McCormick, Evidence § 835 at 68 (2d ed. 1972).

■ The government argues vigorously in this court that the inconsistency between the failure to speak and the trial testimony is obvious. Appellant had testified on direct examination, in effect, that he attempted to flee from the scene of the crime, not because he was guilty, but because he was on parole. He had not told this to his parole officer. The government suggests that appellant had a vital interest in having previously provided his parole officer with this innocent explanation; had he done so he might have prevented the revocation of his parole, and at a minimum, set the stage for corroboration of his trial testimony. His failure to do so therefore constituted an inconsistency.

While the government's reasoning might appear convincing at first blush there is equally convincing reasoning supporting a contrary inference. The nature of an accused's relationship with his parole officer is not such that in most instances the former would view their interests as coextensive. And here appellant was a defendant in the instant case when he spoke to his parole officer. Knowing that one is the focus of a criminal action serves to make one more cautious about the advisability of discussing one's defense with others than an attorney. Presumably an attorney would advise his client not to do so. Moreover, the record here reveals insufficient facts about the content of appellant's conversation with his parole officer to support an inference that it would have been natural for him to explain why he ran. *See* Note, *Tacit Criminal Admissions,* 112 U.Pa.L.Rev. 210, 215–16 (1963–64).

It is for this latter reason that we find that the government made an insufficient showing of a material inconsistency so as to permit a reasoned exercise of discretion by the trial court as to admissibility. It did not meet its burden of showing that the prior silence was probative for credibility purposes. Indeed from the tenor of the government's questions (*e. g.,* ". . . did you tell him your explanation about this whole case . . . ?") one might conclude that the government was suggesting that it was incumbent upon appellant to volunteer exculpatory information. There is a potential for both prejudice and confusion in permitting impeachment of a defendant for failure to discuss exculpatory evidence with third persons.

■ We therefore conclude that it was error to permit the use of appellant's silence for impeachment purposes. However, the error although compounded by the prosecutor's closing argument,[2] was not of constitutional dimensions. On this record we find it not to require reversal. *See generally Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

The evidence of guilt was strong. Appellant admitted entering the victim's resi-

---

2. The government attempts to characterize the prosecutor's remark as "ambiguous." The fact is that the statement can be read as suggesting that appellant's testimony regarding "a probation [*sic*] warrant outstanding" was a fabrication because there was no warrant. Yet the government was in possession of a District of Columbia Bail Agency report stating that such a warrant was issued, as well as a letter from the Board of Parole including an application for review of conditions of release, which was served upon the government and filed.

Appellant does not contend, nor is there any indication, that the misleading statement was deliberate. The court instructed that arguments by counsel were not evidence in the case. The jury knew that there was a parole officer and that there was neither corroboration nor contradiction of testimony as to the existence of a warrant. While it is unlikely that the statement could have caused substantial prejudice (*see Smith v. United States,* D.C. App., 315 A.2d 163 (1974)), we view such a tactic with disfavor.

dence with his girl-friend and an acquaintance. The victim identified appellant and his girl-friend at the scene as two of three intruders who robbed him at the point of a sawed-off shotgun although the victim was unable to identify appellant at trial. Officers, arriving at the scene, found appellant and the woman fleeing over a fence in the back of the premises—a sawed-off shotgun lying on the ground nearby. When stopped, appellant told the officers that he and the woman lived in the burglarized house and that the victim inside was his uncle. Property of the victim was found in the purse of the woman.

We conclude that the errors complained of did not result in prejudical error requiring reversal, and we therefore order that the judgment be

*Affirmed.*