**Theodore SINGLETON, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 83–993.

District of Columbia Court of Appeals.

Submitted Nov. 9, 1984.

Decided March 15, 1985.

Irwin A. Goldberg, Washington, D.C., appointed by the court, for appellant.

Bradley L. Kelly, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Judith Hetherton, and Donald Allison, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEBEKER, FERREN and BELSON, Associate Judges.

BELSON, Associate Judge:

Appellant was convicted by a jury of one count of assault with intent to commit robbery, D.C.Code § 22–501 (1981).[1] He appeals on the grounds that the government presented insufficient evidence of guilt and that the prosecutor's cross-examination of appellant concerning appellant's postarrest, post-*Miranda* warning silence constituted reversible error. We agree with appellant's latter contention and reverse.

I

The complainant testified that on December 8, 1980, at about 6:30 or 7:00 p.m., he left the District of Columbia Jail, at 1901 D Street, S.E., where he was employed as a classification and parole officer. Complainant walked around the wall of the jail, which was fronted by high shrubbery, to his parked car. A person repeating the

---

1. Appellant pled guilty to a Bail Reform Act violation, D.C.Code § 23–1327(a) and received a consecutive sentence of 1 to 3 years in prison with credit for time served.

words, "I gotcha, I gotcha," grabbed complainant from behind, and pulled down complainant's stadium coat, pinning his arms behind him. Complainant testified that he had never seen or spoken with his assailant before he was grabbed. Complainant explained that the "person apparently searched my backside. Fortunately for me the pants I had on had a waistline pocket. He was pulling on to where my wallet was." The wallet was located in complainant's back left-hand pocket. The assailant punched complainant "a couple of times" and kept moving the coat so that complainant could not balance himself. This struggle continued for several minutes and complainant testified that "he kept shaking me and hitting me. Every time I tried to get away picking the back side of my coat up. I was just trying to stay ... to keep him from getting to my hip, to keep him from getting to my wallet." The struggle continued until two correctional officers pulled his antagonist off of complainant.

Correctional Officer Gregory Hanna testified that he was patrolling the perimeter of the jail by automobile that night when he saw two men struggling and another officer running toward them. Officer Hanna identified appellant in court and said he was swinging at complainant and trying to get in his pocket. Officer Hanna assisted another corrections officer in restraining appellant and placing handcuffs on him. Officer Hanna called for a supervisor to come to the scene and requested notification of the Metropolitan Police. Officer Dewey of the D.C. Police arrested appellant shortly after 8:00 p.m.

Appellant testified that on December 8, he was looking for an old friend, but became lost because he was new to the area. While walking around the D.C. Jail, appellant saw a woman, and asked her, "What's happening, sweetheart?" Appellant testified that complainant, who was on the scene, said to him, "[t]his is not the way you talk to a female," and engaged him in a verbal dispute. Thinking that complainant was reaching out and that "it was a strike on me," appellant hit complainant, who fell in the bushes. On cross-examination appellant asserted that complainant hit him first and that appellant hit complainant twice in self-defense. Within 2 or 3 minutes, some persons grabbed appellant from behind. Appellant was subsequently arrested and charged with assault with intent to commit robbery.

II

Appellant contends that the trial judge should have granted his motion for judgment of acquittal. Viewing the evidence in the light most favorable to the government, *see e.g., United States v. Covington*, 459 A.2d 1067, 1070–71 (D.C.1983), we hold that the government presented adequate probative evidence of each of the elements of assault with intent to commit robbery. *See Jennings v. United States*, 431 A.2d 552, 555 (D.C.1981), *cert. denied*, 457 U.S. 1135, 102 S.Ct. 2964, 73 L.Ed.2d 1353 (1982).[2]

Appellant argues that the government introduced no evidence to support the inference that appellant intended to rob complainant, because appellant did not demand money or announce his intent to rob, citing *Dowtin v. United States*, 330 A.2d 749, 750 (D.C.1975) (defendant announced, "This is it, a stick-up"). *Dowtin* is not support for a *requirement* that a defendant announce his intent. It is well established that the jury may infer the intent to rob from the "totality of the evidence." *E.g., Dowtin, supra*, 330 A.2d at 750; *Accardo v. United States*, 102 U.S.App.D.C. 4, 4, 249 F.2d 519, 519 (1957), *cert. denied*, 356 U.S. 943, 78 S.Ct. 787, 2 L.Ed.2d 817 (1958). The jury heard the testimony of complainant that appellant "was pulling on to where my wallet was," and that he struggled to prevent appellant "from get-

---

2. The elements are: 1) that defendant assaulted complainant, and 2) at the time of the assault, "the defendant acted with specific intent to commit the offense of robbery upon the complainant." Criminal Jury Instructions for the District of Columbia, No. 4.13 (3d ed. 1978).

ting to my hip, to keep him from getting to my wallet." Officer Hanna corroborated complainant's testimony by his observation that appellant was "trying to go in [complainant's] pocket." The evidence was sufficient for the jury to infer that appellant intended to rob complainant.

### III

Appellant contends that the government violated his right to due process of law when it impeached him at trial with his silence following his arrest and receipt of *Miranda* warnings, citing *Doyle v. Ohio,* 426 U.S. 610, 618–20, 96 S.Ct. 2240, 2245–46, 49 L.Ed.2d 91 (1976). We agree.

The Supreme Court held in *Doyle* that the prosecution's questioning of the defendants about their silence at the time of arrest and after receiving *Miranda* warnings for impeachment purposes violated their right to due process. *Id.* at 618–19, 96 S.Ct. at 2245. The Court explained:

> Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

*Id.* at 617–18, 96 S.Ct. at 2244–45 (citation and footnotes omitted). The trial judge here permitted the prosecutor's questioning of appellant's postarrest, post-*Miranda* silence after appellant—who was originally restrained by correction officers—had explained on cross-examination his pre—*Miranda* silence to the correction officers:

> Q. Did you tell [the persons who grabbed you] that it was just an argument between you and [complainant]?

A. They told me to shut off before they'd knock my teeth out.

Q. Did you tell anybody—anybody?

A. No one wanted to listen.

Q. I am asking you if you told anybody.

A. Did I tell anybody like who? I didn't understand the question.

Q. Like the police or anybody. Did you tell them all that this was, was a misunderstanding, a fist fight, the night that you were arrested? Did you tell anyone?

A. No one wanted to hear what I wanted to say because it was an official of the corrections which they asked me what was my place of residence and I had to give them a New York City address because I didn't have any relatives here and they wanted to verify who I was.

I had credentials on me which they was able to verify I was from New York City.

Appellant explained that he was thereafter taken to a police station. The cross-examination continued:

Q. Do you recall being advised of your rights?

A. Yes.

Q. And you recall your being asked questions if you wanted to answer questions and tell the police what happened. Right?

A. Right.

Q. Well, isn't it true that you just refused to say anything to the police at all?

A. Because I didn't have a lawyer present.

[DEFENSE COUNSEL]: Objection, Your Honor. . . .

THE COURT: . . . Now, the questions have been perfectly fair because he said originally he didn't say anything because these were corrections officers. Now when he went to the police station—the D.A. is trying to show is that these were not corrections officers. This is entirely

proper and the predicate was laid by your own witness.

Go ahead.

[THE PROSECUTOR]:

Q. You didn't tell anybody?

A. No, because I didn't have an attorney present.

Q. But before—before you even knew—before you even knew who were police or who weren't police out there by the jail you didn't tell anybody that this was just a mistake, a fist fight.

A. They was trying to beat me up. I was trying to protect myself.

We agree with appellant that it was error for the prosecutor to question him about his postarrest, post-*Miranda* silence.[3] At the same time, we point out that not every question by a prosecutor about a defendant's postarrest, post-*Miranda* silence is improper. The Supreme Court has observed that a postarrest silence might be used to contradict a claim by the defendant that he had told the police upon arrest the same exculpatory version as his testimony. *Doyle, supra,* 426 U.S. at 620 n. 11, 96 S.Ct. at 2245 n. 11 (silence not used for impeachment of exculpatory story but to challenge testimony about behavior following arrest). Appellant here, however, did not open the door to questions about his post-*Miranda* silence. Appellant did not indicate that he remained silent when confronted by the corrections officers because

he wished to give his story only to the police.[4] Thus it was error for the trial judge to permit the prosecutor to question appellant about his postarrest, post-*Miranda* silence.

The government contends that any such error here does not warrant reversal because the error was harmless beyond a reasonable doubt.[5] *United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 1979–80, 76 L.Ed.2d 96 (1983); *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Error is harmless in this context if, "absent the prosecutor's [cross-examination of appellant about his post-*Miranda* silence], ... it [is] clear beyond a reasonable doubt that the jury would have returned a verdict of guilty." *United States v. Hasting, supra,* 103 S.Ct. at 1981 (citing *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969)). The government observes that the prosecutor did not remark on appellant's post-*Miranda* silence during his closing argument. *Cf. Walker v. United States,* 402 A.2d 424, 427 (D.C.1979) (error of admitting evidence of defendant's failure to provide his parole officer with innocent explanation compounded by repetition in closing argument; still harmless error when evidence of guilt was strong).

Appellant's credibility was crucial to his defense. No witness was able to corroborate completely the complainant's testi-

3. We note that appellant objected only to questions directed to his postarrest, post-*Miranda* silence and did not question on appeal the propriety of questions about his silence to the corrections officers or police *before* his arrest or receipt of *Miranda* warnings. *See Fletcher v. Weir,* 455 U.S. 603, 607, 102 S.Ct. 1309, 1312, 71 L.Ed.2d 490 (1982) (impeachment by postarrest, pre-*Miranda* silence not due process violation); *Jenkins v. Anderson,* 447 U.S. 231, 240–41, 100 S.Ct. 2124, 2130–31, 65 L.Ed.2d 86 (1980) (impeachment by prearrest silence not due process violation).

4. The facts here are distinguishable from those in *United States v. Mavrick,* 601 F.2d 921, 932–34 (7th Cir.1979), where it was held that defendant had opened the door to cross-examination on his postarrest, post-*Miranda* silence when he

himself had raised on direct examination the issue of his opportunity to explain his conduct after his arrest. In the instant case, by contrast, the entire colloquy took place during cross-examination by the prosecutor. *See also United States ex rel. Saulsbury v. Greer,* 702 F.2d 651, 655–56 (7th Cir.) (on defendant's direct examination defense initiated inquiry about defendant's postarrest, post-*Miranda* silence; prosecution permitted to question defendant on that silence on cross-examination), *cert. denied,* 461 U.S. 935, 103 S.Ct. 2104, 77 L.Ed.2d 310 (1983).

5. Our holding on the sufficiency of the evidence does not dispose of this issue. Evidence may be sufficient to sustain a conviction yet not so strong as to render harmless the error of questioning on post-*Miranda* silence. *Williams v. Zahradnick,* 632 F.2d 353, 364 (4th Cir.1980).

mony. Corrections Officer Hanna, a witness who was neutral except for his common employment with complainant, did not observe the early stages of the struggle between appellant and complainant. While his testimony partially corroborated complainant's testimony—he testified that he saw appellant try to go into complainant's pocket—this remained in significant part a case in which the jury had to credit complainant's version over that of appellant in order to convict. Appellant's version was not inherently implausible. When the prosecution uses post-*Miranda* silence, as it did here, to attack the heart of the defense, the error is unlikely to be harmless. *See Wil-*

*liams v. Zahradnick,* 632 F.2d 353, 361 n. 10, 363 (4th Cir.1980) (because the nature of a *Doyle* error is so egregious and so inherently prejudicial, reversal is the norm rather than the exception).[6] Under the circumstances, we cannot say that the error was harmless beyond a reasonable doubt.

*Reversed and remanded for further proceedings consistent with this opinion.*

---

6. *See also United States v. Edwards,* 576 F.2d 1152, 1155 (5th Cir.1978) (the circumstances under which the *Doyle* error will not occasion a reversal are few and discrete); *Reid v. Riddle,* 550 F.2d 1003, 1004 (4th Cir.1977) (use of post-*Miranda* silence in cross-examination and closing argument not harmless error when defense raised substantial issues of fact, despite strong evidence of guilt).

We found harmless error in *Walker, supra,* 402 A.2d at 424, where the defendant's failure to explain his defense to his parole officer was not clearly shown to be materially inconsistent with his defense, and thus was not as harmful as the impeachment here, and the evidence of guilt was strong. *Id.* at 427–28.