Taff **JONES**, Appellant,

v.

**UNITED STATES**, Appellee.

Kenneth D. **WARD**, Appellant,

v.

**UNITED STATES**, Appellee.

Nos. 84–1313, 84–1331.

District of Columbia Court of Appeals.

Argued June 5, 1986.

Decided on Rehearing Jan. 7, 1987.[1]

1.  These appeals were originally decided by our opinion of October 29, 1986 which is vacated today. This opinion follows consideration of a petition for rehearing filed by appellant Ward and a request for corrections filed by appellant Jones. The disposition and analysis remain unchanged.

J. Herbie Di Fonzo, Washington, D.C., appointed by this court, for appellant Jones.

Merrilyn Feirman, with whom Calvin Steinmetz, Washington, D.C., was on the brief, for appellant Ward. David A. Lee, Washington, D.C., appointed by this court, also entered an appearance for appellant Ward.

Barry Coburn, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Thomas J. Tourish, Jr., and Charles L. Hall, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEBEKER, MACK and NEWMAN, Associate Judges.

MACK, Associate Judge:

Jones and Ward appeal their convictions of felony murder while armed, D.C.Code §§ 22–2401, –3202 (1981), assault with intent to commit robbery while armed, *id.* §§ 22–501, –3202, attempted robbery while armed, *id.* §§ 22–2902, –3202, second-degree murder while armed, *id.* §§ 22–2403, –3202, and possession of a prohibited weapon, *id.* § 22–3214(a). Both appellants assert that their convictions on the first three charges must be set aside because of insufficient evidence of specific intent to rob. They also contend that since the "while armed" enhancement section, *id.* § 22–3214, merges with the prohibition against possessing a dangerous weapon, *id.* § 22–3214(a).

We agree that there was insufficient evidence for the jury to find a specific intent to rob, and therefore reverse the convictions of felony murder while armed, assault with intent to commit robbery while armed, and attempted robbery while armed. How-

ever, the remaining claims are meritless and we therefore affirm the convictions of second-degree murder while armed and possession of a prohibited weapon.

## I

At trial, George Kendall testified that on the evening of June 13, 1983, he drove himself and Richard Feldpusch from Maryland into the District of Columbia to purchase illegal narcotics. The pair went first to the area around "12th and W," but left "because there was nobody around to get drugs from." They then drove to another neighborhood with which they were familiar, around Tenth and O Streets, N.W., and parked their van. By waving his arm or shouting, Feldpusch flagged down Taff Jones, who was standing on the sidewalk. Jones responded by approaching the van. Feldpusch asked Jones if Jones had any Dilaudid. After receiving an affirmative reply, Feldpusch agreed to purchase four Dilaudid capsules for $140.

Jones left, walked to the corner, and returned to Kendall's van with Kenneth Ward. Jones told Kendall to turn off the engine, and then entered the van so quickly that the rear view mirror was knocked onto the floor.[2] Kendall and Jones both reached to the floor to recover the mirror, but a scuffle ensued when Kendall grabbed Jones around the neck. It was at that point that Kendall looked up, and saw Ward "standing at the corner of the van with [a] gun pointing inside the vehicle."

Kendall ran from the van, leaving Feldspuch supine on the front seat trying to kick at the shotgun. As he fled, he was chased for only a few feet by Ward, who then returned to the van. After running a couple of blocks, Kendall heard a shot. He did not go back to his vehicle, but went to a phone booth to call a friend who came to pick him up and took him home. He began calling local hospitals after he arrived home, and eventually learned that Feldpusch had been taken to George Washington University Medical Center, where he was pronounced dead.

A resident of the neighborhood testified that he saw Feldpusch inside a blue van struggling with Jones, who was trying to pull Feldpusch out of the van. He saw Jones shoot Feldpusch with a "long barreled gun." Another eyewitness saw a commotion around the van, heard a shot, and watched Ward running from the scene with a shotgun.

## II

Appellants first challenge the denial of their motion for judgment of acquittal of felony murder, assault with intent to rob, and attempted robbery. Specifically, they assert that the evidence adduced at trial was insufficient to prove their intent to rob Feldpusch and Kendall. In evaluating a claim of insufficient evidence, an appellate court must view the evidence in the light most favorable to the government, recognizing that it is the province of the jury to determine credibility and weigh the evidence. *McClain v. United States*, 460 A.2d 562, 567 (D.C.1983). It is also the prerogative of the jury to draw justifiable inferences from the evidence, and in our review, we must give the government the benefit of all reasonable inferences. *Id.; Blackledge v. United States*, 447 A.2d 46, 49 (D.C.1982).

▇▇▇ Intent being a state of mind, unless admitted by the defendant, it must be shown by circumstantial evidence "because there is no way of fathoming and scrutinizing the human mind." Criminal Jury Instructions for the District of Columbia, No. 3.02 (3d ed. 1978); *see also Shelton v. United States*, 505 A.2d 767, 770 (D.C. 1986); *Bethea v. United States*, 365 A.2d 64, 87 (D.C.1976) (existence of intent determined only by inference). As Blackstone stated, "[N]o temporal tribunal can search the heart, or fathom the intentions of the mind, otherwise than as they are demonstrated by outward actions...." 1 C.

---

2. Kendall testified that Jones appeared to have "something else on his mind" other than consummating the drug sale. When Jones' swift entry knocked the mirror down, Kendall decided that Jones and Ward intended robbery and "bodily harm" to him and Feldpusch.

Appellant Ward contends that the admission of Kendall's testimony about Jones' state of mind was error. We need not decide this point, however, because even if his comments were properly admitted, there is still not the quantum of evidence necessary for conviction.

TORCIA, WHARTON'S CRIMINAL LAW § 25, at n. 1 115–16 (14th ed. 1978) (quoting 4 W. BLACKSTONE, COMMENTARIES * 121). These outward actions must be such that reasonable people, based on their common experience, could be led to conclude beyond a reasonable doubt that appellant intended to commit the crime with which he was charged. *Shelton v. United States, supra,* 505 A.2d at 770.

We have previously explained that intent to rob may be inferred not only from "the words uttered by the suspect but also from his conduct or from the 'totality of the evidence.'" *Owens v. United States,* 497 A.2d 1086, 1090 (D.C.1985) (citation omitted). A brief review of cases in which we have held that the requisite intent could be inferred from the evidence on record is helpful to our analysis here. In *Owens, supra,* the victim was confronted at night in an alley by three men, two of whom were carrying pistols. One said to him "This is it." He asked "Like what? What is it?" After receiving the response "Like you know what it is," the victim attempted to escape and was shot. The assailants then fled. Those facts were sufficient foundation for the inference of intent to rob.

We also held it reasonable for the jury to infer intent to rob in *Singleton v. United States,* 488 A.2d 1365 (D.C.1985). There, the victim testified that he was assaulted as he walked to his car after work. His antagonist repeatedly said "I gotcha, I gotcha" as he grabbed him from behind, and pulled his coat down over his arms. *Id.* at 1367. While his arms were thus pinned behind him, his assailant tried to reach into his back pocket. The contest continued for several minutes, the assailant punching, shaking, and hitting the victim while trying to gain access to the back pocket. The struggle ended only when the attacker was pulled away by two co-workers of the victim.

In *Dowtin v. United States,* 330 A.2d 749 (D.C.1975), two robbers entered an office "brandishing a revolver at the four employees there, and announcing: "This is it, a stick-up. Everybody lie down on the floor.'" *Id.* at 750. One victim was wearing a wristwatch, and carried an empty wallet. Although he was searched twice, his wallet was not opened, and nothing was taken from him. The robbers left with cash taken at gunpoint from two clerks in an adjacent office. Dowtin, on appeal, challenged only the conviction involving the victim from whom nothing was taken, the appellant contending that the victim had been searched only to determine if he was armed. This court held that from the words of the robbers, and the two searches

> a jury could reasonably infer that if the holdup men found what they were looking for, they would have appropriated it. Whether it was a weapon or money is immaterial. The totality of the evidence indicates an intent at the time of the assault "to steal and take valuable goods and property from the person and from the immediate actual possession" of the victim.

*Id.* (citation omitted).

Similarly, in *Accardo v. United States,* 102 U.S.App.D.C. 4, 249 F.2d 519 (1957), the United States Court of Appeals for the District of Columbia Circuit refused to set aside a conviction for attempted robbery where a man had approached a gas station locked for the night, aimed a gun at the proprietor through a window, and demanded "Now, you go over and unlock that door. I'm coming in." *Id.* at 5, 249 F.2d at 520 (Bazelon, J., dissenting). The proprietor refused to comply with the gunman's order, instead locking himself in the washroom, and calling for aid through the window of that room.

■ Unlike cases in which we have determined that the required intent was inferable, here there were no words spoken by Jones and Ward that indicate such intent, no search of the van or its occupants, no actual attempt to remove anything from the scene of the encounter. In this case, both the first contact between assailants and victims and the first violence between assailants and victims were initiated by the victims. Simply stated, although the facts here strongly suggest the desire to com-

plete an illegal sale of drugs,[3] they are not sufficient for the jury to find beyond a reasonable doubt that Jones and Ward intended robbery. This lack of evidence compels us to reverse, and so we vacate the judgments and sentences for the convictions of felony murder while armed, assault with intent to commit robbery while armed, and attempted robbery while armed.

### III

Appellants also argue that their convictions of the armed offenses, D.C.Code § 22–3202, merge with their convictions of possession of a dangerous weapon, D.C. Code § 22–3214. Because the " 'power to define criminal offenses and to prescribe punishments' " is solely a legislative function, the dispositive question in merger analysis is one of statutory intent. *Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981) (citation omitted).

The Supreme Court outlined in *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), the method to be used in construing District of Columbia statutes when engaging in merger analysis. The Court, noting that the legislative histories of the rape and felony murder statutes at issue in *Whalen* were not helpful in determining legislative intent with regard to consecutive sentences, turned to the *Blockburger* test,[4] a mandatory rule of statutory construction (codified in D.C. Code § 23–112) that prohibits the imposition of multiple punishments for "two offenses arising out of the same criminal

transaction unless each offense 'requires proof of a fact which the other does not.' " *Whalen, supra,* at 691, 100 S.Ct. at 1437 (citation omitted).

Unlike the situation in *Whalen,* we have in the instant case a clear indication of legislative intent.[5] Thus:

D.C.Code § 22–3202(a) provides, in relevant part:

(a) any person who commits a crime of violence in the District of Columbia when armed with or having readily available any pistol or other firearm (or imitation thereof) or other dangerous or deadly weapon (including a sawed-off shotgun, shotgun, machine gun, rifle, dirk, bowie knife, butcher knife, switchblade knife, razor, blackjack, billy, or metallic or other false knuckles [is subject, in addition to the penalty provided for the specific crime of violence, to a term of imprisonment which may be up to life imprisonment].

D.C.Code § 22–3214 provides in pertinent part:

(a) No person shall within the District of Columbia possess any machine gun, sawed-off shotgun, or any instrument or weapon of the kind commonly known as a blackjack, slingshot, sand club, sandbag, switchblade knife, or metal knuckles, nor any instrument, attachment, or appliance for causing the firing of any firearm to be silent or intended to lessen or muffle the noise of the firing of any firearms.

\*　　\*　　\*　　\*　　\*　　\*

(D.C.1981). However, we could follow the *Whalen* analysis here and reach the same result as we reach by relying upon specific intent. Thus looking at the provisions of the two sections we see that to find a violation of subsection 3202, the jury must find that a crime of violence has been committed. However, a person may violate subsection 3214(a) without committing a violent crime. Therefore, subsection 3202 requires proof of a fact which subsection 3214(a) does not.

On the other hand, subsection 3214(a) prohibits only possession of the particular weapons enumerated therein, but subsection 3202 is violated by the ready availability of *any* dangerous weapon during commission of a violent crime. Therefore, subsection 3214(a) requires proof of a fact which subsection 3202 does not.

---

3. In reviewing appellants' claim we remain mindful of the principle that " 'the government is not required to negate every possible inference of innocence before an accused can be found guilty of an offense beyond a reasonable doubt.' " *Chaconas v. United States,* 326 A.2d 792, 798 (D.C.1974) (quoting *In re T.J.W.,* 294 A.2d 174, 176 (D.C.1972)). However, in the case at bar, the government has failed to negate even the most probable explanation of the conduct of appellants: that they were attempting to consummate an illicit transaction initiated by Kendall and Feldpusch.

4. *See Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

5. In the posture of this case, unlike that of *Whalen,* we are not considering the merger question in relation to consecutive sentences. *See Ball v. United States,* 429 A.2d 1353, 1358

(c) Whoever violates this section shall be punished [by imprisonment of not more than one year unless previously convicted of a violation of this section or of a felony, in which case he shall be imprisoned for not more than ten years].

■ Our review of the two statutes mandates the conclusion that Congress intended to create separate and distinct offenses. We note first that violations of the two sections subject the offender to different punishments and that the litany of weapons specified, while similar, is not identical.

Moreover, and most important, the two prohibitions examined here do not protect the same interests. *See Robinson v. United States*, 501 A.2d 1273, 1276 (D.C.1985); *Rouse v. United States*, 402 A.2d 1218, 1221 n. 4 (1979). D.C.Code §§ 22–2901, –3202 (1981) (armed robbery) protects against theft of property from the person aided by force or violence or by fear caused by the threat of it. *Id.* However, "Congress enacted [§ 22–3214(a)] to enforce drastically a prohibition against carrying particular dangerous weapons within the District of Columbia.... '[T]he weapons listed ... are so highly suspect and devoid of lawful use that their mere possession is forbidden.' " *Worthy v. United States*, 420 A.2d 1216, 1218 (D.C.1980) (citations omitted).

We note finally that this court has considered the interaction of subsection 3202 with other sections of the Code on previous occasions. *See, e.g., Woody v. United States*, 369 A.2d 592 (D.C.1977) (no merger with subsection 3214(b) prohibition of possession of specified weapons "with intent to use unlawfully against another" because proof of the subsection 3214(b) intent not an element of the "while armed offense"); *Rouse v. United States, supra*, 402 A.2d at 1221 (no merger with subsection 3204 (carrying a pistol without a license), because subsection 3204 "presupposes an operable unlicensed pistol outside one's own premises or place of business, but not proof that the pistol was used in a robbery or, for that matter ... in any other crime").

Consequently, we hold that appellants were not subjected to multiple punishments for the same offense when they were sentenced for violating both D.C.Code § 22–3202 and D.C.Code § 22–3214(a).

■ The remaining claims do not merit extensive discussion. Jones' argument that he was improperly impeached is not persuasive: contrary to his claim, the impeachment was not interlaced with his denial of a key element of the offense charged. *Dorman v. United States*, 491 A.2d 455 (D.C. 1984) (en banc). Furthermore, the trial court did not abuse its discretion in refusing to sever Ward's case from that of Jones. *Carpenter v. United States*, 430 A.2d 496, 501 (D.C.), *cert. denied*, 454 U.S. 852, 102 S.Ct. 295, 70 L.Ed.2d 143 (1981). Finally since Kendall, the alleged initiator of the scuffle in the van, had fled the scene well before the fatal shot was fired and since no weapons were subsequently recovered from the van, an instruction on self-defense or defense of a third person would have " 'indulge[d] and even encourage[d] speculations as to bizarre reconstruction' " of the uncontested facts. *Day v. United States*, 390 A.2d 957, 963 (D.C. 1978) (quoting *United States v. Sinclair*, 144 U.S. App. D.C. 13, 15, 444 F.2d 888, 890 (1971)). The trial court, therefore, did not err in refusing to grant the requested instruction.

Appellants' convictions and sentences for possession of a prohibited weapon and second-degree murder while armed are therefore affirmed.